*E-FILED 03-31-2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEHRDAD NIKOONAHAD,<br><br>　　　　　Plaintiff,<br>　v.<br><br>GREENSPUN CORPORATION; G.C. INVESTMENTS, LLC; THIRD POINT PARTNERS L.P.; THIRD POINT PARTNERS QUALIFIED L.P.; THIRD POINT OFFSHORE FUND LTD.; THIRD POINT ULTRA LTD.; THIRD POINT LLC,<br><br>　　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　／ | No. C09-02242 HRL<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS; (2) DENYING PLAINTIFF'S MOTION TO AMEND; AND (3) DENYING PLAINTIFF'S MOTION FOR REMAND**<br><br>**[Re: Docket Nos. 4, 15 and 18]** |

　　　　Defendants removed this matter here, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332. Pursuant to Fed. R. Civ. P. 12(b)(6), they now move to dismiss the complaint for failure to state a claim for relief. Plaintiff opposes that motion. He also moves for leave to amend the complaint to add two diversity-destroying defendants, as well as for an order remanding this case to the California Superior Court. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. Upon consideration of the moving and responding papers, as well as the arguments of counsel, this court grants defendants' motion to dismiss, denies plaintiff's motion to amend, and denies plaintiff's motion for remand.

I. BACKGROUND

The following facts are drawn from the allegations of the complaint, as well as documents submitted for judicial notice[1]:

In 2007, plaintiff Mehrdad Nikoonahad formed a start-up company called Solar Notion, a Delaware corporation. The business reportedly was based on a plan to produce inexpensive solar energy panels using a proprietary technology for depositing silicon onto a glass substrate.

On August 17, 2007, defendants Third Point Offshore Fund, Ltd., Third Point Partners, L.P., Third Point Partners Qualified, L.P. and Third Point Ultra, Ltd. (collectively, the "Third Point Entities") executed an Investors Rights Agreement ("August 2007 Agreement") whereby they became investors in Solar Notion. (Complaint ¶ 9). Plaintiff executed this agreement on behalf of Solar Notion, and individually as one of the company's founders.

Several months later, defendants Greenspun Corporation and G.C. Investments ("Greenspun Entities") became investors in the company. And, on December 7, 2007, an Amended and Restated Investors' Rights Agreement ("December 2007 Agreement") was executed. Plaintiff signed this agreement on behalf of Solar Notion, and individually as one of the company's founders. (Complaint ¶ 10).

Section 2.8 of the December 2007 Agreement provides that if a particular milestone ("Milestone") for the production of certain material for the solar panels was not reached by February 17, 2008, then the Third Point Entities and the Greenspun Entities had the right to

---

[1] Pursuant to Fed. R. Evid. 201, defendants' request for judicial notice is granted. In his opposition to the instant motion, plaintiff submitted a declaration attaching a number of documents, including several of the agreements mentioned in the complaint. He only belatedly asked this court to take judicial notice of those matters in connection with his separate motion for remand. Most of the matters in and appended to plaintiff's declaration apparently are matters that are subject to dispute and are not appropriate subjects for judicial notice. Nevertheless, the complaint refers extensively to (1) the August 17, 2007 Investors' Rights Agreement, (2) the December 7, 2007 Amended and Restated Investors' Rights Agreement; and (3) the March 27, 2008 Amendment No. 1 to Amended and Restated Investors' Rights Agreement, which are appended as Exhibits A, B, and H to plaintiff's declaration. There is no apparent dispute as to the authenticity of these documents, and this court properly may consider them in resolving the instant motion. See Knievel v. ESPN, 393 F.3d 1068, 1976 (9th Cir. 2005). The court has otherwise not considered statements made in plaintiff's declaration. Nor has it considered any of the other exhibits appended to that declaration.

redeem their shares. The prior August 2007 Agreement also contained a similar clause. (Complaint ¶¶ 9, 11).

According to the complaint, in mid-December 2007 while Nikoonahad was serving as Solar Notion's CEO, he realized that the Milestone was unlikely to be met because of alleged unforeseen and unexpected problems with the company's technology. (Complaint ¶¶ 13-14). Plaintiff further alleges that at Solar Notion's January 2008 board meeting, he proposed an alternative approach that would allow the company to substantially achieve the Milestone's objectives, albeit not by the February 17, 2008 deadline. (Id. ¶ 15). Plaintiff claims that the Third Point Entities and the Greenspun Entities approved his plan to pursue an alternative strategy and represented that they would support that plan. (Id. ¶ 16).

Solar Notion did not meet the February 17, 2008 Milestone deadline. Nikoonahad says that, despite success in the board-approved alternative technology, the Third Point Entities and Greenspun Entities exercised their redemption rights on March 12, 2008. (Id. ¶¶ 18-20). In connection with the exercise of their redemption rights, plaintiff claims that defendants forced Solar Notion to enter into an amendment to the December 2007 Agreement ("Amendment No. 1"), which plaintiff says required the company to repurchase defendants' shares for about $9 million more than would have been paid under the December 2007 Agreement. (Id. ¶ 22-23). Claiming that he signed Amendment No. 1 under duress, Nikoonahad says that Solar Notion had no choice but to wind up its business after it repurchased defendants' shares. (Id. ¶ 26).

Thereafter, Nikoonahad claims that defendants' agents resigned from the company's board of directors, essentially leaving him as the sole director and new majority shareholder. (Id. ¶ 27). Disputes reportedly arose in the liquidation process. Plaintiff claims that because defendants then threatened to sue him, he was forced to resign as director of Solar Notion in May 2008. (Id.).

Several months later, plaintiff filed a complaint in Santa Clara County Superior Court for the involuntary dissolution of Solar Notion. The state court appointed a neutral third party liquidator to oversee the process.

The instant lawsuit followed. Plaintiff filed his complaint in state court against the Third Point Entities and Greenspun Entities for (1) rescission of Amendment No. 1 and restitution; (2) breach of fiduciary duty, (3) breach of contract (i.e., Amendment No. 1), and (4) negligence. Additionally, he seeks compensatory and exemplary damages, as well as costs of suit. As noted above, defendants removed the case to this court and then moved to dismiss the entire action.[2]

Defendants argue that plaintiff lacks standing to pursue the instant action because the asserted claims are derivative in nature. Even if plaintiff has standing to pursue his claims, defendants maintain that the company's Articles of Incorporation contain provisions that absolve defendants of any liability for breach of duty as directors. For his part, Nikoonahad claims that shareholders Robert Schwartz and Timothy Lash must be added to this lawsuit because they are, in his view, indispensable parties to this litigation. He also seeks to allege breach of the December 2007 Agreement. Because the addition of Schwartz and Lash would destroy diversity (the sole basis for this court's jurisdiction), Nikoonahad argues that the matter should be remanded to state court.

The court turns first to defendants' motion to dismiss and, for the reasons stated below, it agrees that Nikoonahad lacks standing to pursue the instant action.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Documents which properly are the subject of judicial notice may be considered along with the complaint when deciding a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim for relief. See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

---

[2] The parties advise that Nikoonahad has since also filed a derivative suit against defendants and two individual shareholders, Robert Schwartz and Timothy Lash, in state court.

4

1   In such a motion, all material allegations in the complaint must be taken as true and
2   construed in the light most favorable to the claimant. See Balistreri, 901 F.2d at 699. However,
3   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
4   statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Morever, "the
5   court is not required to accept legal conclusions cast in the form of factual allegations if those
6   conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness
7   Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

8   Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
9   claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations
10  must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v.
11  Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted); see
12  also Iqbal, 129 S. Ct. at 1950 ("[O]nly a complaint that states a plausible claim for relief
13  survives a motion to dismiss."). However, a complaint attacked by a Rule 12(b)(6) motion to
14  dismiss does not need detailed factual allegations and "heightened fact pleading of specifics" is
15  not required to survive a motion to dismiss. Bell Atlantic Corp., 550 U.S. at 570. Rather, the
16  complaint need only give "enough facts to state a claim to relief that is plausible on its face."
17  Id.

## III. DISCUSSION

19  Defendants maintain that each and every claim for relief is a derivative claim that cannot
20  be pursued by Nikoonahad individually. Nikoonahad argues that he has standing to seek direct
21  relief because he is a signatory to the shareholder agreements in question.

22  There is no dispute that the proper characterization of a claim as direct or derivative is
23  governed by the law of the state of incorporation, which in this case is Delaware. See In re
24  Verisign, Inc. Derivative Litig., 531 F. Supp.2d 1173, 1214 (N.D. Cal. 2007). Under Delaware
25  law, the character of a claim as direct or derivative is determined by answering two questions:
26  (1) Who suffered the alleged harm — the corporation or the suing stockholder individually? and
27  (2) Who would receive the benefit of the recovery or other remedy? Tooley v. Donaldson,
28  Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004). Under this approach, "a court should

look to the nature of the wrong and to whom the relief should go." Id. at 1039. The determination is to be made by "look[ing] to the body of the complaint, not to the plaintiff's designation or stated intention." Kramer v. Western Pacific Indus., Inc., 546 A.2d 348, 351 (Del. 1988) (internal quotes omitted); see also Seidel v. Allegis Corp., 702 F. Supp. 1409, 1411 (N.D. Ill. 1989) ("Under Delaware law, the issue of whether claims are individual or derivative is determined by viewing the complaint taken as a whole. Characterizations made in the pleadings are not controlling.").

"The stockholder's claimed direct injury must be independent of any alleged injury to the corporation." Tooley, 845 A.2d at 1039; see also Kramer, 546 A.2d at 351 ("For a plaintiff to have standing to bring an individual action, he must be injured *directly* or *independently* of the corporation."). That is, "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." Tooley, 845 A.2d at 1039. "In other words, the inquiry should focus on whether an injury is suffered by the shareholder that is not dependent on a prior injury to the corporation." Agostino v. Hicks, 845 A.2d 1110, 1122 (Del. Ch. 2004).

To be clear, Nikoonahad does not dispute that the claims being asserted in this litigation properly could be asserted by the corporation. Indeed, the parties advised that Nikoonahad has requested that the state court direct the liquidator to intervene in this matter to assert claims on the company's behalf. (No such request for intervention has been made.) Further, at oral argument, plaintiff acknowledged that if his claims prove successful, then any recovery would flow to the company. Nonetheless, he maintains that, by virtue of his status as a signatory to the agreements in question, he may also sue defendants directly to obtain that same relief.

A shareholder may have an individual claim where he is deprived of a contractual right. Here, however, when pressed by the court at oral argument, Nikoonahad said only that he has the right to either rescind or enforce the agreements in question and acknowledged that he cannot identify any damage that accrues to him specifically under the agreements. Viewing the complaint as a whole, the essence of his allegations is that, as a result of Amendment No. 1 and alleged unfair dealing and mismanagement by defendants, the company's assets were depleted

and the business ruined, to defendants' benefit and at the expense of the company, the company's other investors, and common shareholders, including plaintiff:

Claim 1 for Rescission and Restitution alleges that plaintiff was forced to sign Amendment No. 1, thereby causing the company to overpay defendants about $9 million when they exercised their redemption rights. (Complaint ¶¶ 28-34). As noted above, Nikoonahad acknowledges that any restitution to be paid will be to Solar Notion.

Claim 2 for Breach of Fiduciary Duty alleges breaches of fiduciary duty based upon Amendment No. 1 and alleged mismanagement leading to the loss of corporate assets and a loss in the value of the company's common stock. (Complaint ¶¶ 35-40). These alleged losses are entirely derivative in nature. See Kramer, 546 A.2d at 353 ("A claim of mismanagement resulting in corporate waste, if proven, represents a direct wrong to the corporation that is indirectly experienced by all shareholders.").

Claim 3 for Breach of Contract alleges that defendants breached their contractual duties by "failing to act in good faith and impeding and preventing the timely and orderly liquidation of Solar Notion," leading to the loss of corporate assets and a loss in value of the company's common stock. (Complaint ¶¶ 42-55). This is essentially another claim for alleged mismanagement that is derivative in nature. See Kramer, 546 A.2d at 353.

Claim 4 for Negligence essentially alleges that defendants failed to protect the company's assets that were supposed to be distributed to all common shareholders when the company was liquidated. (Complaint ¶¶ 56-62). This again essentially is a claim for mismanagement that is derivative in nature. See Kramer, 546 A.2d at 353.

Plaintiff has not convincingly argued that the circumstances here compel a contrary conclusion. He cites two cases for the general proposition that only a party to a contract has the right to sue under that contract. Neither one has anything to do with shareholder suits, much less with the determination whether a claim is direct or derivative. See Rottlund Homes of New Jersey, Inc. v. Saul, Ewing, Remick & Saul LLP, 243 F. Supp.2d 145, 153 (D. Del. 2003); see also Hatchwell v. Blue Shield of California, 198 Cal. App.3d 1027, 1034, 244 Cal. Rptr. 249 (1988). Moreover, as explained by the Delaware Supreme Court:

> Normally, claims of corporate overpayment are treated as causing harm solely to the corporation and, thus, are regarded as derivative. The reason (expressed in Tooley terms) is that the corporation is both the party that suffers the injury (a reduction in its assets or their value) as well as the party to whom the remedy (a restoration of the improperly reduced value) would flow.

Gentile v. Rossette, 906 A.2d 91, 99 (Del. 2006). Nikoonahad argues that the instant case falls within the one transactional exception recognized by the Gentile court as being both direct and derivative in nature — i.e., "where: (1) a stockholder having majority or effective control causes the corporation to issue 'excessive' shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders." Id. at 100. The circumstances alleged here do not fall within Gentile's "atypical" transactional paradigm. See id. at 100 n.21. Plaintiff does not allege that a controlling shareholder exchanged Solar Notion stock for assets of a lesser value. Instead, as discussed above, the gist of the allegations is that defendants were overpaid $9 million under Amendment No. 1 when they redeemed their shares, causing a depletion of corporate assets and the eventual cessation of operations. Thus, "any dilution in value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the entire corporate entity, of which each share of equity represents an equal fraction." Gentile, 906 A.2d at 100. It follows that Nikoonahad's allegations properly are characterized as claims of corporate overpayment that must be treated as derivative under Tooley. As noted above, plaintiff acknowledged that he could not identify any damage that accrued to him specifically. Nor has he suggested that any further facts could be pled that would give rise to an individual claim for relief.

Accordingly, this court concludes that plaintiff lacks standing to pursue the instant action. The court also finds it unnecessary to address defendants' arguments as to the alleged exculpatory clause in the company's Articles of Incorporation. Having concluded that defendant's motion to dismiss should be granted for lack of standing, plaintiff's motion for leave to amend the complaint is denied, as is his motion for remand.

## IV. ORDER

Based on the foregoing, IT IS ORDERED THAT:

1. Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss is GRANTED.
2. Plaintiff's motion for leave to amend the complaint is DENIED.
3. Plaintiff's motion for remand is DENIED.
4. The clerk shall enter judgment and close the file.

Dated: March 31, 2010

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5:09-cv-02242-HRL Notice has been electronically mailed to:

Ardell Johnson arjoh@pacbell.net

Eric Berg EBerg@bhfs.com, MEldridge@bhfs.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.